## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Christina Collazo | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| Starbucks Corporation d/b/a Starbucks Coffee Company | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Christiana Collazo, (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendant and in support of such Complaint avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Family Medical Leave Act, 29 U.S.C. §2601 *et seq* (hereinafter "FMLA") and the Americans with Disabilities Act of 1990 as amended ("ADA") and Title VII (Gender) Discrimination. Moreover, this Honorable Court has jurisdiction over plaintiff's state law claims to the extent that she pleads them pursuant to 28 U.S.C. §1367.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff filed her claims with the Equal Employment Opportunity Commission ("EEOC") as dual filed with the Pennsylvania Human Relations Commission ("PHRC") docketed as 530-2019-00337C. In a letter dated July 8, 2019 the plaintiff received a right to sue from the EEOC (see attached as Pl's Exhibit A) and has fully exhausted her claims.

4. Plaintiff brings this action against her former employer, Starbucks Corporation d/b/a/ Starbucks Coffee Company (hereinafter "Starbucks") which operates as the Starbucks Roasting Plant & Distribution Center ("Starbucks Roasting Plant").

5. Starbucks has a principal place of business in York County, Pennsylvania located at 3000 Expresso Way, York, Pennsylvania 17408.

6. Plaintiff alleges, *inter alia*, that she was discriminated against and/or retaliated against based on the exercise of her rights under the ADA, Title VII (Gender), and FMLA and/or attempt to exercise those rights, that the applicable defendant unlawfully interfered with, restrained, and/or denied and retaliated against plaintiff due to her exercise of ADA, Title VII (Gender) and FMLA and/ or attempt to exercise those rights, including but not limited to the discharge of plaintiff's employment.

7. Plaintiff is an adult female who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was formerly employed by Starbucks.

## UNDERLYING FACTS

8. Plaintiff commenced employment with Starbucks on June 2011.

9.  On July 12, 2015, plaintiff was transferred to the position of Loader Technician.

10. The team she was assigned to was all-male and she was the only female except for lead Bonnie Martz and plaintiff's lead, Jennifer Arline, whom became her supervisor on or about June 2017.

11. From the time of her transfer until October 2017, plaintiff met or exceeded Starbucks' performance expectations.

12. Specifically, under technical expertise Starbucks cites that the plaintiff met expectations as follows: "[demonstrates technical skills and abilities needed to perform the job duties within position; demonstrates understanding of own job impact on others; utilizes technical knowledge for problem solving and troubleshooting; achieves productivity goals.

13. Further, under Quality in its performance documents it states: '[m]aintains product quality through adherence to Good Manufacturing Practices, HAACP and Food Safety procedures, product specifications and quality procedures; completes tasks thoroughly and accurately to maintain compliance to quality standards.

14. Further, as to professionalism, the plaintiff was said to: [c]ontribute to positive and productive work environment; listens and communicates effectively and

respectfully through appropriate language and behavior; remains composed under stress, demonstrates good judgment and discretion; *acts in accordance with Starbucks Core Competencies, Mission and Guiding principles,* (emphasis added).

15. In fact, Ms. Arline herself wrote in the plaintiff's October 1, 2017 review that she met all expectations and "...that she had been doing a very good job with running the green coffee cleaning systems as well as performing the job tasks within our green coffee transfer process as well.  Christina has not had any quality issues during this review period and has not been involved in any cross contamination green coffee NIS's…"   Further, she stated that "…Christina supports all our plant safety initiatives. Christina is currently at 100% for ZIP participation for the first half of the fiscal year 2017.  Christina has a passion for safety and making sure that not just herself but that everyone is safe every day so that they can all go home at the end of the day the same way that they came into work, which is admirable!"

16. Furthermore Ms. Arline stated, "[w]ith this passion for safety we have offered Christina to become a PIT trainer for our sit-down Toyota forklift operations…"   Also, of critical import, plaintiff had not had any warnings or disciplinary notifications within the last fiscal year (2017).

17. On or about late October 2017, plaintiff began notifying Ms. Arline that she was experiencing neck and shoulder pain that was becoming more serious than what she had experienced beforehand. This would reoccur on multiple occasions throughout the remaining time she was employed, yet she was merely told to "ice it" or "use bio freeze" as this is standard practice when you work at Starbucks to avoid on the job injuries and workers compensation issues.

18. Furthermore, Starbucks has a policy called "I Care" which imposes ice treatments and the suggested use of OTC painkillers when employees raise mobility or pain issues at work. This instead of having them seek appropriate medical attention for injuries that Starbucks arbitrarily and unilaterally considers to be less serious. Thus, employees are not encouraged to have an objective evaluation undertaken by an independent medical professional.

19. Nonetheless, plaintiff continued raising the issue of her pain on multiple occasions for the remainder of the fall of 2017 into the last two weeks of her employment, also seeking days off for sick and vacation to try to rest her neck and shoulder. However, Starbucks never gave her notice of her rights under the Pennsylvania Worker's Compensation Act ("PWCA").

20. Still, when plaintiff would give notice of her need for workplace accommodations, such as in February 2018 when she requested to drive the "lift"

to give her neck and shoulder a rest, she was simply told by Ms. Airline to ask someone else to allow her to drive.

21. However, male co-workers would not permit her to do so even though she was scheduled to drive and Ms. Airline failed to correct or remedy the matter.

22. Once more, Ms. Arline would frequently tell plaintiff to work on "cleaning" when plaintiff notified her of her pain but then would quickly change her mind and have plaintiff cut coffee all day even though she knew she was experiencing serious discomfort.

23. Thus, Ms. Arline failed to engage in an interactive discussion with the plaintiff about an accommodation of her medical issues, or to correct and remedy ongoing discrimination, instead yelling at the plaintiff because she was bringing these issues to her attention and failing to hold team members accountable when she claimed she was not permitted to drive.

24. Additionally, the plaintiff told Ms. Arline that another male co-worker named "Jim" was not treated the same way as she, but would be allowed to drive the lift for example, until his pain subsided, while the plaintiff was frequently required to load heavy bags in spite of the pain she was experiencing.

25. Once more, male counterparts were often given time off and allowed to work other less labor-intensive roles while plaintiff was forced to do their work for them.

26. Furthermore, when plaintiff was unable to have Ms. Arline correct these issues, she would go to Donna Johnson, the Human Resources manager.  However, Ms. Johnson also failed to assist her, instead validating the underlying discriminatory conduct of Ms. Arline.

27. Remarkably, the discipline and write-ups of late 2017 and 2018 did not occur until after the plaintiff began to raise her health-related issues in late 2017 as well as her complaints of gender-based harassment at that time.

28. For example, plaintiff was disciplined for "working on easier coffee cuts", however, plaintiff states this was common practice across all shifts so that male workers would do similar things and yet not be disciplined for it.

29. Further, despite her protest, her male counterparts would not be disciplined for making crude and offensive statements such as jokes about men's "dicks", telling gay jokes, or making statements about the plaintiff personally, such as when "Al," a male co-worker told plaintiff that she had a "butt like a super sack" which is a reference to large sack of coffee.

30. Plaintiff sought transfers in the workplace for these reasons as well as due to her health issues yet neither her supervisors nor would her human resource department correct or remedy the underlying harassment.

31. Further, when it was plaintiff's turn to use the company computers, male co-workers would rush to use the computers then find it funny when she would ask

to use it since it was her turn.  They would subsequently provoke her to respond in frustration and then file an incident report against her in an attempt to have her fired. Yet, when plaintiff reported these issues, Ms. Arline was dismissive and failed to take prompt and corrective action to prevent the harassment.

32. Plaintiff believes this was both intentional and malicious in an effort to force her to quit so that Ms. Arline would not need to deal with her increasingly burdensome workplace injuries, or deal with her objections to both disability and gender discrimination.

33. Consequently, in or about March 2018, plaintiff went to yet another manager, Ryan White, whom is the direct supervisor of Ms. Arline, to complain about Ms. Arline and Ms. Johnson.

34. Further, she stated that Ms. Arline was making new rules for her to follow, yet the men did not have to follow the same rules.

35. Plaintiff also told Mr. White that she was required to do tasks that would put more strain on her existing injuries.  However, at that time Mr. White took no action to remedy any of her concerns.

36. Additionally, plaintiff objected to being written up all at once in March 2018 for trivial infractions such as, "working ahead." She stated to Mr. White that the write ups were not justified since other male co-workers would work outside the 24-hour shift and not be written up.

37. At that time, Mr. White did then state to Ms. Johnson that the March 2018 write ups were in error because Ms. Arline had failed to recognize that the clock fell under military time.

38. Nonetheless, they would not change the discipline despite the fact that plaintiff showed them that there were printouts of other male teammates loading "outside the windows" on March 6,8,13, and the 25th and possibly other dates.  Still, no investigations were undertaken, or changes made meaning the plaintiff was held to a different standard than her male counterparts.

39. Plaintiff concedes that she tried to bring levity to a situation at work by joking with a co-worker "Al" after he had been corrected for something trivial.  "Al" frequently would say to her "that she had a black cloud over her" after she would be corrected or disciplined."  Thus, she asked "Al" "if he had a black cloud over his head" in an attempt to show him that she knew how he felt about being disciplined for meaningless things by Ms. Arline. Nonetheless, she was disciplined for saying this to "Al" although neither he nor any other male co-worker was ever disciplined when they would say the exact same things to her in similar circumstances, with Ms. Arline's knowledge.

40. Further, plaintiff was disciplined for yelling at another co-worker. However, workers wear ear plugs in the plant so that plaintiff had to raise her voice to inform a new "partner" that there was a strict policy of keeping glass porcelain

out of the coffee at Starbucks (as is both appropriate and required of partners). Thus, plaintiff merely wanted him to know, and not to be fired for doing so.

41. This was yet another attempt by the Starbucks to try to find petty reasons to discipline the plaintiff in an effort to terminate her due to her allegations of harassment.

42. Further, on March 28, 2018, Gerald Henderson met with plaintiff to ask about what would become her 3rd level write up.  Plaintiff told him the events did not happen as he described and asked why her co-workers were doing this to her and why the harassment was being allowed to continue.

43. Plaintiff then told him that she was having anxiety attacks when Ms. Arline approached her and due to what she perceived as Ms. Arline's continuing harassment and retaliation.

44. On or about April 2, 2018, plaintiff told Mr. Henderson that she felt recent accusations against her were retaliation.

45. On or about May 3, 2018, plaintiff spoke to Mr. White about denied time off requests and a co-worker "Al" kicking over a storage can in her presence, and that this intimidated her, but Mr. White did nothing.

46. On June 6, 2018, plaintiff spoke to Mr. White, yet again, about "Al's" continued unprofessional behavior and how things got so much worse after he got in trouble for yelling at her.  Mr. White still took no action to remedy the harassment.

47. On June 20, 2018, plaintiff met with Ms. Johnson and told her that she felt her 3rd level write up was in retaliation because of her complaints and stating that the events did not happen as were described. Still, Ms. Johnson took no action to investigate.

48. On July 2, 2018, plaintiff spoke to Mr. White about how she was pulled off the lift for in 'incident' without damage, yet "Orlando" a male co-worker was not pulled off when he busted a pallet apart and broke coffee bags.

49. Plaintiff was subsequently terminated on July 12, 2018.

50. Plaintiff avers her performance was "meet expectations" beyond her October 2017 evaluations, however, that she required workplace accommodations such as being permitted to perform less labor intensive work while her neck and shoulder pain could heal, receive transfers, or providing intermittent medical leave for which she was qualified, to allow her to more fully heal from her workplace injuries.

51. Plaintiff is a member of the protected classes, disabled, female and she was qualified for the position as it is noted in her performance reviews dating back several years through October 2017.

52. She suffered adverse employment actions due to the multiple, unjustified disciplinary write-ups, denial of reasonable transfers requested due to the hostile

work environment created by male members of her team and Ms. Arline, and the subsequent termination.

53. Plaintiff avers that she notified Starbucks of her pain and Starbucks would not let her switch to less labor-intensive positions.

54. Further, plaintiff avers that Ms. Arline stated to plaintiff on December 14, 2017 that she was "getting hurt too much" since she had been reporting frequent neck and shoulder pain.

55. Thus, the plaintiff avers that Ms. Arline both *regarded* the plaintiff *as* having a disability pursuant to 29 CFR § 1630.2(l)) and was aware that plaintiff had a *record of having a disability*.

56. Further, plaintiff was qualified for the position as it is noted in her performance reviews dating back several years through October 2017, as she met or exceeded expectations.

57. Once more, plaintiff has established, as more fully noted above, that the Starbucks failed to address her frequent requests for accommodation due to pain, that Starbucks failed to correct or prevent her notice of harassment based on disability, and Starbucks terminated her within two (2) weeks of her discussions with them regarding her pain, and within a few days of taking time off to rest her neck and shoulder.

58. Plaintiff therefore avers and asserts federal and state gender-based discrimination and harassment claims pursuant to Title VII and the Pennsylvania Human Relations Act (hereinafter "PHRA"). She also raises factual averments which invoke the Americans with Disabilities Act. ("ADA") as well as corresponding claims under the PHRA.

59. Plaintiff also raised claims of hostile work environment due to co-workers and supervisor harassment and retaliation due to her objections to such harassment as well as the fact that she spoke directly to multiple supervisors about the harassment and no action was undertaken to correct or remedy the harassment.

60. Further, plaintiff requested Diversity/Anti-Harassment training for her department at Starbucks beginning in September 2017.

61. However, Starbucks did not perform any training until the plaintiff called the "Ethics Hotline" several months later.

62. Still, her supervisor's complicity in the harassment undermined any attempt on the plaintiff's part to seek a remedy of the ongoing harassment.

63. Thus, the supervisor harassment provides her with strict liability under *Ellerth Farragher*.

64. Starbucks is liable for the acts of its agents through the doctrine of *Respondeat Superior*.

## COUNT 1
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE

65. Plaintiff incorporates all forgoing paragraphs as though fully set forth.

66. Plaintiff's medical conditions constitute a "serious health condition" as that term is defined under and pursuant to the FMLA.

67. Starbucks was provided with sufficient information to reasonably verify that plaintiff required treatment by a health care provider for her serious health conditions.

68. At all relevant times hereto, plaintiff had been employed by Starbucks for at least 12 months and had been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the time period in which she should have been granted FMLA.

69. At all relevant times hereto, Starbucks employed 50 or more employees within 75 miles of plaintiff's worksite for a period of 20 or more calendar work weeks.

70. Accordingly, at all time's material to this Complaint, Starbucks was a "covered employer" within the meaning of the FMLA.

71. At all times material to this Complaint, plaintiff was an "eligible employee" within the meaning of the FMLA.

72. Plaintiff's medical leaves of absence or search for intermittent leave for her neck and shoulder pain in 2017 and 2018 were protected absences under and pursuant to the FMLA and regulations promulgated thereunder.

73. Instead, Starbucks and its agents, disciplined and terminated plaintiff after she sought medical leave, and instead of notifying her of her rights under and pursuant to the FMLA.

74. Starbucks was required to communicate with the plaintiff regarding her rights under FMLA, including but not limited to the provision of an individualized notice to employees regarding FMLA rights and obligations.

75. On or about October 2017, plaintiff provided proper notice of her need for FMLA intermittent leave to seek future treatments on account of her serious medical condition.

76. Starbucks failed to acknowledge her injuries and provide notice of eligibility, provide plaintiff her entitled FMLA leave of absence, or intermittent leave when she required leave to seek treatment, continuing treatment and rehabilitation.

77. Instead, Starbucks and its agents harassed plaintiff by repeatedly disciplining her during times in which she was seeking treatment for her serious health conditions and writing her up for perceived performance deficiencies for which she sought FMLA or workplace accommodation protections.

78. Starbucks possessed no good faith legitimate basis for its discipline or the discharge of plaintiff's employment.

79. Starbucks prevented plaintiff from receiving FMLA by forcing her to endure repeated absences and on the job-site rehabilitative procedures ("icing") without notifying her of her rights under the FMLA.

80. Starbucks interfered with plaintiff's rights under the FMLA and/or retaliated against her as a result of her request or notice of her need for FMLA leave and/or the attempt to use FMLA leave.

81. The prevention of plaintiff's use of FMLA leave in 2017 and 2018, and the unjustified discipline of the plaintiff once she sought FMLA protections constitutes an adverse employment action.

82. Starbucks interfered with plaintiff's rights under the FMLA in one or more ways including but not limited to the following:

    a. Unreasonably withholding approval and/or authorization of plaintiff's request for medical leave.

    b. Failing to effectively communicate with plaintiff regarding the status of her FMLA.

    c. Failing to follow normal procedures with respect to the processing of a leave request pursuant to the FMLA.

    d. Failing to provide timely written notices to plaintiff as required by the FMLA and regulations promulgated thereunder.

e. Discouraging plaintiff from utilizing FMLA, including but not limited to disciplining her contemporaneously with and following her requests for evaluations regarding her medical leave.

f. Discharging plaintiff's employment without cause effective on or about July 12, 2018.

g. Discharging plaintiff's employment without cause in order to deprive her of FMLA leave.

h. Denying plaintiff reinstatement and/or restoration that she was entitled to under the FMLA.

83. As a result of Starbucks' violations of the FMLA, as more fully described above, plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefore.

84. As a result of Starbucks' violations of the FMLA, as more fully described above, plaintiff is entitled to be reinstated to her position, or to front pay and benefits, pursuant to the FMLA, and claim is made therefore.

85. Plaintiff is further entitled to recover her attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefore.

## COUNT 2
## FAMILY AND MEDICAL LEAVE ACT RETALIATION

86. Plaintiff incorporates all forgoing paragraphs as though fully set forth.

87. In 2017 and 2018, plaintiff exercised her rights or attempted to exercise her rights under the FMLA.

88. The FMLA and regulations promulgated thereunder prevent an employer from discriminating against employees who have exercised rights and/or taken FMLA leave. 29 U.S.C. §2615(a) (2); 29 C.F.R. §825.220(c).

89. Starbucks willfully violated the FMLA and regulations promulgated thereunder in that they disciplined, discharged, discriminated, and/or retaliated against the plaintiff as a result of her attempt to use FMLA leave, including but not limited to the following:

a. Unreasonably withholding approval and/or authorization of plaintiff's request for medical leave.

b. Failing to effectively communicate with plaintiff regarding the status of her FMLA requests and need for continuing treatment.

c. Failing to follow normal procedures with respect to the processing of a leave request pursuant to the FMLA.

d. Failing to provide timely written notices to plaintiff as required by the FMLA and regulations promulgated thereunder.

e. Discouraging plaintiff from utilizing FMLA, including but not limited to disciplining her contemporaneously with and following her requests for evaluations regarding her medical leave.

f. Discharging plaintiff's employment without cause effective on or about July 12, 2018.

g. Discharging plaintiff's employment without cause.

90. Starbucks willfully violated Section 29 U.S.C. §2615(a)(2) in that they discharged, discriminated and/or retaliated against plaintiff as a result of her use of FMLA leave, or attempt to use FMLA leave, as more fully set forth above.

91. Starbucks' acts and omissions, and conduct as more fully described above, were knowing and willful.

92. Starbucks' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis thereby rendering Starbucks liable for liquidated damages pursuant to the FMLA, and claim is made therefore.

93. As a result of Starbucks' violation of the FMLA, as more fully described above, plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefore.

94. As a result of Starbucks' violations of the FMLA, as more fully described above, plaintiff is entitled to be reinstated to her position, or to front pay and benefits, pursuant to the FMLA, and claim is made therefore.

95. Plaintiff is further entitled to recover her attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefore.

96. The discharge of plaintiff's employment effective on or about July 12, 2018 constitutes an adverse employment action.

**WHEREFORE**, Plaintiff demands damages for Starbucks' actions including:

- Economic and/or Actual damages;
- Liquidated as applicable;
- Reasonable attorney's fees, expert fees and costs of suit
- Any other relief that this Court deems just and equitable.

### COUNT 3
### VIOLATION OF TITLE VII/PHRA
### DISCRIMINATION

97. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

98. By the conduct described above, Starbucks intentionally deprived the plaintiff of the same rights as are enjoyed by males in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and the PHRA when it disciplined and fired the plaintiff.

99. Further, by allowing male workers to retain their positions and not be disciplined or terminated as was the plaintiff.

100. Further, to permit the continuing use of derogatory and harassing comments by co-workers and supervisors thus permitting a hostile work environment to fester and continue while she was employed.

101. Further, to permit retaliatory conduct such as discipline, layoff and termination after plaintiff reported the harassment.

102. As a result of Starbucks' actions in violation of Title VII and the PHRA, the plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Starbucks' actions or inaction, thereby entitling her to compensatory damages.

103. In its discriminatory actions, as alleged above, Starbucks' acted with malice or reckless indifference to the rights of the plaintiff, thereby entitling her to an award of punitive damages.

104. Further, the Starbucks' intentionally discriminated against plaintiff due to her status: female.

105. To remedy the violations of the rights of the plaintiff secured by Title VII and the PHRA, plaintiff requests that the Court award her the relief prayed for below.

## COUNT 4
### TITLE VII/PHRA GENDER
### HOSTILE WORK ENVIRONMENT

106. Plaintiff incorporates all forgoing paragraphs as though fully set forth.

107. Plaintiff was subjected to unlawful harassment by male partners at work and by her supervisors as more described above.

108. Plaintiff never welcomed such harassment.

109. Starbucks' conduct was motivated by plaintiff's gender (female).

110.   The conduct of Starbucks and its agents was severe or pervasive such that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive.

111.   Plaintiff believed her environment at work to be hostile or abusive as a result of the conduct of Starbucks and its agents as more fully described above.

112.   Plaintiff suffered a tangible employment action, as more fully described above, and when she was disciplined and terminated and due to the hostile work environment which Starbucks permitted to continue unabated.

113.   To remedy the violations of the rights of the plaintiff secured by Title VII and the PHRA, plaintiff requests that the Court award her the relief prayed for below.

### COUNT 5
### VIOLATION OF TITLE VII/PHRA
### RETALIATION

114.   Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

115.   Plaintiff reported the harassment of her co-workers and supervisors as more fully described above.

116.   Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and the PHRA prohibits retaliation against one whom engaged in protected activity including reporting harassment in the workplace.

117.   Plaintiff engaged in protected activity (i.e. reporting harassment due to her protected status) in 2017 and 2018 when she went to supervisors and upper level management with her reports of the same.

118.   There was a causal connection between the reporting of the harassment and unwarranted discipline and her subsequent termination.

119.   If not for plaintiff's engaging in protected activity Starbucks would not have taken action to deprive her of her job through unwarranted discipline and would not have fired her.

120.   As a result of Starbucks' actions in violation of Title VII and the PHRA, the plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Starbucks' actions or inaction, thereby entitling her to compensatory damages.

121.   In its discriminatory actions, as alleged above, Starbucks' acted with malice or reckless indifference to the rights of the plaintiff, thereby entitling her to an award of punitive damages.

122.   Further, Starbucks' intentionally retaliated against the plaintiff as more fully described above due to her protected status: female.

123.   To remedy the violations of the rights of the plaintiff secured by Title VII and the PHRA, plaintiff requests that the Court award her the relief prayed for below.

## COUNT 6
## ADA/PHRA DISCRIMINATION

124.   Plaintiff incorporates all forgoing paragraphs as though fully set forth.

125.   At all relevant times hereto, plaintiff was qualified to perform the duties associated with her position.

126.   Plaintiff has impairments which substantially limit one or more major life activities: neck and shoulder injuries as well as anxiety and depression.

127.   Starbucks and its agents were aware of the plaintiff's disabilities as outlined more fully above.

128.   Starbucks and its agents regarded plaintiff as having disabilities and plaintiff has a record of such disabilities based upon her multiple reports of the same to Starbucks.

129.   Starbucks failed to properly investigate whether the plaintiff should have been accommodated due to her neck and shoulder pain, anxiety and/or depression.

130.   Starbucks and its agents also discriminated against plaintiff on account of her protected activity, including that the Starbucks disciplined and then terminated plaintiff's employment due to its knowledge of plaintiff's disabilities.

131.   To remedy the violations of the rights of the plaintiff secured by the ADA and the PHRA, plaintiff requests that the Court award her the relief prayed for below.

**COUNT 7**
**VIOLATION OF ADA/PHRA**
**HOSTILE WORK ENVIRONMENT**

132.   Plaintiff incorporates all forgoing paragraphs as though fully set forth.

133.   Plaintiff was subjected to unlawful harassment as more described above.

134.   Plaintiff never welcomed such harassment.

135.   Starbucks' conduct was motivated by plaintiff's disability.

136.   The conduct of Starbucks and its agents was severe or pervasive such that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive.

137.   Plaintiff believed her environment at work to be hostile or abusive as a result of the conduct of Starbucks and its agents as more fully described above.

138.   Plaintiff suffered a tangible employment action, as more fully described above, and when she was disciplined and terminated and due to the hostile work environment which Starbucks permitted to continue unabated.

139.   To remedy the violations of the rights of the plaintiff secured by Title VII and the PHRA, plaintiff requests that the Court award her the relief prayed for below.

### COUNT 8
### VIOLATION OF ADA/PHRA
### RETALIATION

140.   Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

141.   Plaintiff reported her neck and shoulder pain and the subsequent the harassment of her co-workers and supervisors as more fully described above.

142.   The ADA/PHRA prohibits retaliation against one whom engaged in protected activity including reporting the need for accommodations for her disability and harassment in the workplace.

143.   Plaintiff engaged in protected activity (i.e. reporting her need for accommodations and harassment) in 2017 and 2018 when she went to supervisors and upper level management with her reports of the same.

144.   There was a causal connection between the reporting of the need for workplace accommodations, the harassment and the unwarranted discipline and subsequent termination that followed plaintiff's reports.

145.   If not for plaintiff's engaging in protected activity, Starbucks would not have taken action to deprive her of her job through unwarranted discipline, and would not have fired her.

146.   As a result of Starbucks' actions in violation of the ADA and the PHRA, the plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Starbucks' actions or inaction, thereby entitling her to compensatory damages.

147.   In its discriminatory actions, as alleged above, Starbucks' acted with malice or reckless indifference to the rights of the plaintiff, thereby entitling her to an award of punitive damages.

148.   Further, Starbucks' intentionally retaliated against plaintiff as more fully described above due to her protected status: disabled.

149.   To remedy the violations of the rights of the plaintiff secured by the ADA and

the PHRA, plaintiff requests that the Court award her the relief prayed for below.

**COUNT 9**
**WRONGFUL DISCHARGE IN VIOLATION OF**
**PENNSYLVANIA PUBLIC POLICY**

150.   Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

151.   The Commonwealth of Pennsylvania has a public policy for worker health,

safety and welfare ensuring that workers are kept safe and free from harm.

152.   Plaintiff was unlawfully discharged by Starbucks because she sought benefits

and remedies under the PWCA after specifying to her employer that injuries and

the exacerbation of those injuries were occurring to her (as more fully described

above – neck and shoulder injuries and pain) during her work for Starbucks.

153.   Plaintiff avers she made numerous reports of neck and shoulder pain in the

workplace due to the working conditions as more fully noted above.

154.   Further, plaintiff avers that Starbucks failed to acknowledge the workplace

injuries and her rights to notice of her rights under the PWCA, and the right to

seek appropriate treatment, instead offering its own medical advice and

downplaying the injuries of the plaintiff in an effort to avoid incurring a PWCA

report and the consequent expenses following therefrom.

155.   "[A] discharge may violate a 'clear mandate of public policy' if it results from

conduct on the part of the employee that is required by law or from the employee's

refusal to engage in conduct prohibited by law. 'The public policy exception has

been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law.'" *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir. 1990).

156.    Starbucks' discipline and discharge of the plaintiff for her multiple reports of unsafe working conditions, and for seeking assistance for her reoccurring neck and shoulder pain and discomfort, offends clear mandates of public policy in the Commonwealth of Pennsylvania and supports a tort claim for wrongful discharge, *Herskowitz v. Cty. of Lebanon*, No. 1:13-CV-00431, 2013 WL 5719250, (M.D. Pa. Oct. 21, 2013).

157.    Furthermore, a public-policy exception to the at-will doctrine was recognized by the Pennsylvania Supreme Court in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998), where the Court held that an at-will employee who alleges a claim of retaliatory discharge for filing a workers' compensation claim has stated a common law cause of action for which relief may be granted.

158.    The plaintiff sought assistance from her employer due to injuries caused by workplace conditions while she was on the job.

159.    Plaintiff's communication of her health issues, which were directly related to the conditions at work, placed the employer on notice of the plaintiff's need for workers compensation such that the discipline and subsequent discharge due to her injuries and pain violated public policy, entitling her to damages.

160.   The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

161.   As a deliverer of coffee products in Pennsylvania, Starbucks are aware of its responsibility to the public that its partners operate in compliance with Pennsylvania safety regulations, and therefore the Starbucks' discipline and termination of plaintiff due to her reports of unsafe working conditions constitutes a reckless disregard for the public welfare and the workers in its care.

162.   As a result of plaintiff's discipline and termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish and loss of self-esteem, as well as economic loss and damage to her reputation and thereby seeks relief for the same.

163.   Further, Starbucks' acted with malice or reckless indifference to the rights of the plaintiff, thereby entitling her to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Starbucks, its officers, successors, assigns and all persons in active concert or participation with it, from discriminating against females and disabled employees, and from engaging in employment practices which discriminate on the basis of gender and disability.

B. Order Starbucks to institute and carry out policies, practices and programs which provide equal opportunities for qualified individuals with disabilities, and females, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Starbucks to make whole the plaintiff, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Starbucks to make whole the plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described more fully above, including but not limited to job search expenses, medical expenses, insurance expenses, missed housing payments and related expenses, in amounts to be determined at trial.

E. Order Starbucks to make whole the plaintiff by providing compensation for past and future non pecuniary losses resulting from the unlawful employment practices described more fully above, including emotional pain and suffering, anxiety, depression, stress, and loss of self-esteem, in amounts to be determined at trial.

F. Order Starbucks to pay plaintiff punitive damages under and pursuant to the ADA, Title VII and for Wrongful Discharge (only) for its malicious and reckless conduct, as described more fully above, in amounts to be determined at trial.

G. Order Starbucks to pay plaintiff's attorney's fees and costs.

Respectfully submitted,

DONHAM LAW

By: /s/ Jeremy A. Donham, Esquire
Jeremy Donham, Esquire
Attorney I.D. No. 206980
PO Box 487, Dellslow, WV 26531
717.881.7855 (ph) 888.370.5177 (fax)
Donhamlaw@comcast.net